## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JASON SIARKIEWICZ,**
**Petitioner,**

**v.**                                                              **Case No.  4:07cv383/SPM/MD**

**WALTER A. MCNEIL,[1]**
**Respondent.**

_____

### ORDER and
### REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 14) to which petitioner has replied (doc. 19).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

---

**[1]Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

## BACKGROUND AND PROCEDURAL HISTORY[2]

On September 22, 2000 the victim, Ms. Vega, returned from work to her Tallahassee, Florida home and found that it had been ransacked.  Investigation revealed that someone had entered through the enclosed back porch.  Missing were jewelry boxes, jewelry, and two firearms, among other items.  Investigation further revealed that the victim's neighbor, Ms. McCafferty, had that same day told her adult son, Mr. Jason Siarkiewicz, petitioner here, that he had to move out of her home.  Crime scene personnel found a latent fingerprint on glass at the back door of the victim's home that matched Mr. Siarkiewicz', and the victim testified that Mr. Siarkiewicz had never been in her home before.  Two days later Mr. Siarkiewicz was pulled over by a policeman in Auburndale, Florida, roughly 275 miles distant.  Mr. Siarkiewicz identified himself as Jason Vance.  The officer saw a pouch with jewelry in it, and Mr. Siarkiewicz was arrested.  The next day an inventory search of Mr. Siarkiewicz' car disclosed more jewelry, jewelry boxes, and photographs and other materials with the victim's name on them.

Mr. Siarkiewicz was charged by information in the Circuit Court of Leon County, Florida with one count of armed burglary of a dwelling (Count I), one count of grand theft (Count II), and two counts of grand theft of a firearm (Counts III and IV) (doc. 14 exhibits, ex. A);[3] §§ 810.02; 812.014, Fla. Stat. (2000).  A jury found him guilty of burglary of a dwelling (a lesser-included offense of the Count I charge of

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt.  *Id.* at 319.  The proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, the federal court believes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.*  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a large part in the court's analysis.

[3]Hereafter all references to exhibits will be to doc. 14 exhibits unless otherwise noted.

armed burglary of a dwelling), and guilty as charged on the other three counts (ex. C).  He was sentenced to fifteen years incarceration on the burglary charge, and to concurrent five year terms on the other three charges, all concurrent with count I (exs. D, E).  His direct appeal, his motion for post-conviction relief pursuant to Rule 3.850, Fla.R.Crim.P., and the appeal of the denial of his 3.850 motion were all unsuccessful.  He now brings this federal habeas petition, which respondent concedes is timely (doc. 14, p. 6).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007)

(holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

<u>Ineffective assistance of counsel.</u>

All eight of petitioner's claims for relief in this court are grounded on his contention that he was denied his constitutional right to the effective assistance of counsel. In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the

reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.   As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."   *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).   Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.   *Chandler* at 1314 (footnote omitted).   Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.   Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."   466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.*, at 694, 104 S.Ct. at 2068.   Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.   *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).   In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.   *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

## PETITIONER'S GROUNDS FOR RELIEF

As noted above, petitioner's grounds for federal habeas relief are grounded on his claim that he was denied his constitutional right to the effective assistance of counsel.  He raised these claims in his motion for post-conviction relief pursuant to Rule 3.850, Fla.R.Crim.P., and in denying relief, the Rule 3.850 court applied the principles of *Strickland, supra*.

1. <u>Counsel failed to object and move for mistrial when state witness violated the pretrial stipulation and introduced evidence of petitioner's prior bad acts.</u>

Before trial, defense counsel told the court that there was an agreed stipulation he would ask the court to read to the jury, because he did not want evidence in the record "that there were outstanding warrants for [his] client for a burglary of a convenience [store] . . . ."  (Doc. 14, ex. B, p. 9).  The prosecutor indicated that he would tell the court when the stipulation should be read.

Mr. Siarkiewicz contends that the stipulated agreement, and the reasons for the stipulated agreement, were violated.  He points out that in opening statement, the prosecutor told the jury that the evidence would show that when Officer Hallberg stopped him, Mr. Siarkiewicz said his name was Jason Vance (*id*. at 21).  Officer Hallberg was the first prosecution witness, and testified that he was on patrol and was notified that another officer had seen a stolen tag.  Officer Hallberg saw the car with the tag and stopped it.  Mr. Siarkiewicz was the driver, had no identification with him, and identified himself as Jason Vance (*id*. at 26-27).   At that point the prosecutor asked the court to read the stipulation to the jury, which was done.

The stipulation read: "The State of Florida and the defense stipulate that [Officer] Pete Hallberg had a lawful reason to arrest the defendant in this case."  (*Id*. at 28).

The next witness, Officer Purdue, testified that the next day he inventoried the

car Officer Hallberg had impounded, which was "the victim, Adam Blanton's automobile." (*Id.* at 37).  The prosecution's fifth witness, Deputy Sheriff Smelt of the Leon County Sheriff's Department, testified that he was dispatched to the victim's home after the burglary was discovered.  During cross examination he testified that he went to the neighbor's home.  When asked if he had permission to search the neighbor's home, he said that he asked if Mr. Siarkiewicz was there (he was not) because there were four outstanding warrants for his arrest (*id.* at 68). Finally, in closing argument, the prosecutor told the jury that when Officer Hallberg stopped Mr. Siarkiewicz, "the tag came back as stolen." (*Id.* at 120).  He also told the jury that Officer Perdue had investigated the Auburndale side of the case, and "didn't find anyone, any evidence that anyone there was involved in the crime other than Mr. Siarkiewicz." (*Id.* at 135).

Defense counsel did not object to any of the foregoing.  Mr. Siarkiewicz contends that this was deficient performance and that he was prejudiced by it.

### State Court Decision

Mr. Siarkiewicz raised this ground in his motion for post-conviction relief, and the trial court conducted an evidentiary hearing on the issue.  Mr. Siarkiewicz testified that he understood that the stipulation "was supposed to preclude the traffic stop which resulted in the unrelated arrest in Polk County and the outstanding warrants that [he] had for [his] arrest." (Ex. U, p. 17).  Defense counsel testified that the reason for the stipulation was he had learned that before the traffic stop there were outstanding warrants, and there needed to be a basis for a lawful traffic stop. In his opinion, Officer Hallberg, who mentioned a stolen tag, did not violate the stipulation.  He also felt that when Deputy Smelt mentioned warrants in the context of searching the neighbor's house, the context was not such as to justify objecting and bringing the entire issue to the attention of the jury.  His professional opinion was "no harm; no foul." (*Id.* at 45).  He testified further that one purpose of the stipulation was to keep the state from putting Mr. Blanton (who owned the stolen car

Mr. Siarkiewicz was driving) on the stand in order to justify the traffic stop (*id.* at 62).

The Rule 3.850 court announced its decision from the bench.  On this claim the court found that there was no irrelevant or prejudicial testimony presented so there was nothing for defense counsel to object to; that Deputy Smelt's reference to warrants could reasonably have been interpreted by the jury as relating to the instant case; that reference to Mr. Blanton's automobile was not so prejudicial that it affected the verdict; that objecting to the testimony would have simply brought the matter to the attention of the jury; that Mr. Siarkiewicz' lying to Officer Hallberg about his name was admissible evidence; and that there was neither deficient performance nor prejudice (*id.* at 97-98).

<u>Federal Review of State Court Decision</u>

The Rule 3.850 court made four basic findings: (1) most of the evidence that Mr. Siarkiewicz complained of was admissible, so objecting would have served no purpose, (2) to the extent that anything "came close" to being objectionable, specifically Deputy Smelt mentioning warrants and a reference to Mr. Blanton's automobile, there was no prejudice even if there was deficient performance, (3) counsel's decision not to object was reasonable trial strategy, or in the court's words "I think it would have been probably bad for Mr. Phillips (defense counsel) to have objected to that because it was a passing reference and I don't think it was particularly prejudicial" and (4) in any event, Mr. Siarkiewicz had failed to show prejudice.  (Ex. U, p. 97-98).

As to whether evidence was admissible and an objection would have been overruled, the Rule 3.850 court made its determination based on Florida law, and this court must defer to that legal finding.  Mr. Siarkiewicz' argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897

(11th Cir. 2005), the Eleventh Circuit addressed similar issues. In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial. *Id.* at 1354-55. The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient. *Id.* The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in *Herring*, the state court has answered the question of what would have happened had petitioner's counsel objected to the majority of the claimed objectionable evidence - the objections would have been overruled. Therefore, counsel cannot be faulted for having failed to object. And since counsel would have failed had he acted as Mr. Siarkiewicz contends he should have, he cannot show prejudice.

As to the question of trial strategy - counsel's belief that objecting would have alerted the jury to something that was not otherwise emphasized - this court owes deference to the Rule 3.850 court's finding that the decision not to object was in fact strategic. "Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact. . . ." *Provenzano v. Singletary*, 148

F.3d 1327, 1330 (11th Cir. 1998); *Jackson v. Herring*, 42 F.3d 1350, 1357 (11th Cir. 1995).  Moreover, counsel's tactical decisions on which defense to pursue are "virtually unchallengeable."  *Provenzano*, 148 F.3d at 1332 (quoting *Strickland*); *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995)).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks and citation omitted); see also *Waters v. Thomas*, 46 F.3d at 1518-19 (observing that "[w]e cannot, and will not, second guess" the "strategic decisions trial counsel are called upon to make").  "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy."  *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001).

After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065; *accord Waters v. Thomas*, 46 F.3d at 1522 ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").

As to the question of whether the strategy not to object was sound, the Rule 3.850 court's determination was amply supported by the record and was not unreasonable.  The strategy may not have been the best, but that is not the test.

> "[J]udicial scrutiny of counsel's performance must be highly deferential."  Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that . . . the challenged action might be considered sound trial strategy."  A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance."  Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "*a petitioner must establish that no competent counsel would have taken the action that his counsel did take.*"  *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

*United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003) (emphasis added). The court is satisfied that petitioner has not carried this burden.[5]

Moreover, Mr. Siarkiewicz cannot show that he was prejudiced by the evidence of which he complains.   Even if counsel's conduct was deficient (and the undersigned agrees that the Rule 3.850 court had good reason to find that counsel was not deficient), passing references to warrants, stolen tags, victims and the like had little to do with the jury's finding Mr. Siarkiewicz guilty.  Ms. Vega's home was invaded and personal items were taken; that same day Mr. Siarkiewicz was asked to leave his mother's home, which was next door and the other half of a duplex; Mr. Siarkiewicz' fingerprint was found on glass where the break-in occurred, and he had never been in the victim's home before; two days later Mr. Siarkiewicz was found driving a car in a town roughly 275 miles from the scene of the crime; in the car were

---

[5]The court must also note that on the "close questions" noted by the Rule 3.850 court, if counsel had objected to Deputy Smelt's testimony that Mr. Siarkiewicz had four warrants out against him, or to testimony that Mr. Blanton was a "victim," the objections may have been sustained, and the trial court then would have instructed the jury to disregard the testimony.  That is easily said, and no doubt jurors mean to put such things out of their minds, but in the real world lawyers know that telling a jury to disregard this type of evidence is like saying "Don't think about elephants."  Counsel could have asked for a mistrial, but that would not likely have been granted given the context in which the testimony was given - on cross examination of a  state witness.  Trial lawyers know that sometimes it is wisest simply not to mention elephants.

many of the items stolen from Ms. Vega's home, including photographs of her and her family with names written on them.  In short, although the evidence was circumstantial, it pointed overwhelmingly to Mr. Siarkiewicz as the burglar.  If counsel had objected as Mr. Siarkiewicz contends he should have, there was little chance of a different outcome, much less the required *reasonable probability* that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

### 2.   Counsel failed to challenge the sufficiency of the evidence concerning grand theft of the firearms when he moved for judgment of acquittal.

Ms. Vega testified that two firearms were missing from her home after the burglary.  The jury found that Mr. Siarkiewicz stole them.  He now argues that there was insufficient evidence to support those findings, and that his counsel was ineffective in not raising the issue at trial.

### Custody

Respondent contends any issue concerning theft of firearms is not properly before this court because Mr. Siarkiewicz is not in custody for the crimes for which he was convicted in counts II, III, and IV (counts III and IV charged theft of a firearm). Respondent explains that each of those counts drew a five year sentence concurrent to the fifteen year sentence imposed on count I, and all the five year sentences have been served.

Federal district courts have jurisdiction to entertain petitions for habeas corpus relief only from persons who are "in custody" in violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567, 1572, 179 L.Ed.2d 608 (2001) ("The

first showing a § 2254 petitioner must make is that he is 'in custody pursuant to the judgment of a State court.'"); *see also Unger v. Moore*, 258 F.3d 1260, 1263 (11th Cir. 2001) (holding that the "in custody" requirement for a habeas petition is necessary for the subject matter jurisdiction of the court).  A petitioner is not "in custody" to challenge a conviction when the sentence imposed for that conviction has completely expired. *Maleng v. Cook*, 490 U.S. 488, 490-91, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989).  The Supreme Court has acknowledged however, that when a § 2254 petition can be read as asserting a challenge to the sentence the petitioner is currently serving, as enhanced by the allegedly invalid prior conviction, the petitioner satisfies the "in custody" requirement for federal habeas jurisdiction. *Coss*, 532 U.S. 394, 121 S.Ct. at 1573 (citing *Maleng*, 490 U.S. at 493-94).  Additionally, "a prisoner serving *consecutive* sentences is 'in custody' under any one of them" for purposes of filing a petition for writ of habeas corpus.  *Garlotte v. Fordice*, 515 U.S. 39, 45-46, 115 S.Ct. 1948, 1952, 132 L.Ed.2d 36 (1995) (emphasis added).

In the instant case, petitioner is in custody only for the burglary conviction carrying a fifteen-year sentence.  His concurrent sentences on counts II, III, and IV have expired, and he is no longer serving those sentences.  The convictions on counts II, III and IV were not used to enhance the fifteen-year burglary sentence. Therefore, petitioner cannot bring a federal habeas petition directed at the offenses in counts II, III and IV.  *Coss*, 532 U.S. 394, 121 S.Ct. at 1573 ("Coss is no longer serving the sentences imposed pursuant to his 1986 convictions, and therefore cannot bring a federal habeas petition directed solely at those convictions."); *Steverson v. Summers*, 258 F.3d 520, 523 (6th Cir. 2001) ("Petitioner is not 'in custody' for the state convictions that his petition directly challenges.  Accordingly, the district court correctly determined that it lacked subject matter jurisdiction to consider Petitioner's § 2254 petition."); *see also, e.g., Sweet v. McNeil*, No. 4:07cv295/SPM/WCS, 2008 WL 2313144 (N.D. Fla. June 3, 2008) (habeas petitioner, who received concurrent sentences on  battery and burglary convictions, was no

longer "in custody" on battery conviction because he had fully served that sentence; therefore, district court lacked subject matter jurisdiction over challenge to that conviction).[6] Furthermore, because petitioner does not and cannot justifiably argue that the subject convictions were obtained after a violation of *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that the right to counsel under the Sixth Amendment is applicable to the states by way of the Fourteenth Amendment), the one recognized exception to the general rule would not apply, and the petition would be subject to dismissal as to those convictions.[7]

Petitioner urges the court to consider his challenges to counts III and IV on the firearms charges and cites *Jamerson v. Secretary for Dep't of Corrections*, 410 F.3d 682 (11th Cir. 2005) in support.   However, that case in inapposite, because Jamerson's petition was filed while he was still in custody, and he was therefore "in custody" for purposes of § 2254 under the reasoning of *Maleng, supra*.

Petitioner also argues that his sentences have technically expired but he has not been unconditionally released, because under Florida law he must perform certain acts, including registering with the sheriff of any county he enters within 48 hours of arrival, something he cannot presently do because he is still serving the fifteen-year sentence for his burglary conviction.  That arguments fails, because while Fla. Stat. § 775.13(2) requires such registration, it does not apply after five years from the date of release.  Fla. Stat. § 775.13(4)(c).  Because petitioner is still serving the fifteen-year sentence, the necessary five years from the time of his release from the five-year sentences will occur before he is released from prison.

Furthermore, even if petitioner were required to register pursuant to the statute, that would hardly be a restriction on his freedom, because regardless of the

---

[6] The undersigned cites *Sweet v. McNeil, supra,* only as persuasive authority, recognizing that it is not binding precedent.

[7] In *Daniels v. United States*, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), the majority recognized this one exception to the general rule.  *Daniels*, 532 U.S. at 382 (plurality opinion) & 385 (Scalia, J., concurring), 121 S.Ct. at 1583 (plurality opinion) & 1585 (Scalia, J., concurring).

status of his five-year sentences, he will still have to register for five years after he is released on the fifteen-year sentence. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), is also instructive. There, the Court considered whether a prisoner released on parole was in custody for purposes of habeas review, and concluded that he was, reasoning that the petitioner's liberty was subject to significant restraints. He was required to live in a particular house with a relative, had to work at a job as directed by his parole officer, and could not drive a car without permission. He was not allowed to frequent undesirable places, and had to report regularly to his parole officer. Here, Mr. Siarkiewicz' contention that he remains "in custody" because he may have to register with the sheriff within 48 hours of arrival in a county is not the kind of restraint on his freedom that the *Jones* Court relied on to find continuing custody.

Based on the foregoing, the court lacks subject matter jurisdiction of the claims concerning theft of firearms, specifically counts III and IV, because petitioner is no longer in custody on those convictions. For this reason, the court should find that it lacks subject matter jurisdiction to consider grounds III and IV, and that the claims raised in this ground for relief should not be considered.

### 3.     Counsel failed to object to the use of the "recently stolen property" instruction where the state failed to prove possession.

Mr. Siarkiewicz next contends that counsel should have objected to the court's standard instruction on recently stolen property. For the reasons concerning custody discussed above, this ground has no relevance to counts II, III, and IV, but since intent to commit theft is an element of the burglary charge, it will be addressed here.

The instruction in question says in essence that the evidence may justify a conviction of burglary with intent to steal if property was recently stolen and the defendant possesses it without explanation (Ex. B, p. 151). Respondent says that counsel did make a specific and timely objection to the relevant instruction, arguing

that the instruction shifted the burden of proof to the defendant, and the court overruled the objection (Ex. B, p. 106), so this ground for relief is factually without merit.

But Mr. Siarkiewicz contends that this is irrelevant - that what counsel should have done was object to the instruction on the ground that *possession had not been proven*, which he did not do.  The Rule 3.850 court addressed this claim, and found that there was no ineffectiveness because Mr. Siarkiewicz was "found in possession of this property four days after the burglary, was in the car he was driving." (Ex. U, p. 99).  The court further found that there was no prejudice (*id.* ).  As in *Herring*, the state court held that there was sufficient evidence of possession to justify the instruction.  This court gives deference to that legal finding.  Clearly, based on the evidence presented at trial a rational trier of fact could reasonably have found that Mr. Siarkiewicz possessed the stolen property.[8] *See* note 2, *supra.*  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

    4.    <u>Failure to investigate exculpatory evidence or request sanctions.</u>

Deputies investigating the burglary found an unexplained cigarette butt in the victim's home.  Ms. Vega did not smoke, and did not allow smoking in her home.  The item was taken to the crime lab, but was subsequently destroyed.  Petitioner faults counsel for failing to investigate the issue further.

<u>State Court Decision</u>

At the Rule 3.850 hearing defense counsel testified that he knew the cigarette butt was missing but that he had no reason to believe that it had been destroyed for "any evil purpose."  (Ex. U, p. 54).  He also testified that the missing item gave him

---

[8]The court did not instruct the jury on the definition of possession, but Mr. Siarkiewicz has not raised that issue and it is waived.

a 50/50 chance to argue in good faith that someone else was in Ms. Vega's home, and to prove that the state had lost the item, which it surely would have produced if it had Mr. Siarkiewicz' DNA on it.  The Rule 3.850 court held that defense counsel made extensive use of the state's failure to produce the cigarette butt.  The court also held that defense counsel knew that Mr. Siarkiewicz was guilty (he had admitted the crime to counsel), and knew that if the cigarette butt turned up, it would likely have Mr. Siarkiewicz' DNA on it, so "[t]he truth is he would not have wanted them to find the cigarette butt."  (*Id.* at 99).

### Federal Review of State Court Decision

When Mr. Siarkiewicz cross-examined defense counsel at the Rule 3.850 hearing about whether the missing cigarette butt was potential exculpatory evidence, counsel responded: "Exculpatory evidence requires something that would have proved you didn't commit the crime.  Given the fact that you had admitted to me you committed the crime, it wasn't going to be exculpatory.  It would help prove possibly on a 50/50 basis you or the other party had dropped the cigarette at the residence."  (*Id.* at 82).  The Rule 3.850 court credited this testimony, and this court owes deference to this fact finding.  The court's implicit finding that this was sound trial strategy is well supported by the record, and Mr. Siarkiewicz has not shown that no other lawyer would have adopted the same course, or that there was a reasonable probability of a different outcome had counsel acted differently.   Since Mr. Siarkiewicz admitted to his attorney that he was guilty, and since counsel believed (without explaining why) that there was another party to the crime, there was at least a 50/50 chance that Mr. Siarkiewicz' DNA would show up on the cigarette butt.  There was no logical reason to take that chance.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

5.     __Failure to object to the jury instruction regarding the value element of__

grand theft.

Next Mr. Siarkiewicz contends that his counsel should have objected when the only evidence of the value of the items taken were some photographs and Ms. Vega's self-serving testimony that the lost property was worth around $10,000, but that she really did not know its value.  He contends that under Florida law the value of the property taken must exceed $100, and that there was insufficient credible evidence to support the instruction or the verdict.

This claim relates only to Mr. Siarkiewicz' conviction on count II.  As with counts III and IV, he was sentenced to five years concurrent on this count; he has served the five year sentence; and this court lacks jurisdiction to consider it.

6.      Failure to call alibi witness.

At the Rule 3.850 hearing Mr. Siarkiewicz testified that he told his attorney he wanted to call Adam Blanton as an alibi witness (ex. U, p. 15), but admitted that counsel told him that this was not a good idea, since Mr. Siarkiewicz had already been convicted of stealing Mr. Blanton's car, and that all the evidence concerning that crime would come out at trial (*id.* at 19-20).  Defense counsel testified that he could not call Mr. Blanton as an alibi witness, putting Mr. Siarkiewicz at another place when the crime was committed, because to do so would be proving that Mr. Siarkiewicz did not commit the crime, when Mr. Siarkiewicz had admitted guilt (*id.* at 55).[9]

---

[9]In addition to telling his lawyer he was guilty, Mr. Siarkiewicz wrote a letter to the judge after the verdict but before sentencing in which he apologized for committing the crime (ex. U, p. 58; doc. 1, exhibits, p. 217).

This raises an interesting question.  This court is not generally given to idle speculation, and has not researched the issue in depth, but it seems reasonable for Mr. Siarkeiwicz to consider what would happen if he were to prevail in his quest for a new trial (doc. 1, p. 40).  The official court record now contains Mr. Siarkiewicz' written, signed, unsolicited confession, given outside of any court proceedings, under no coercion, and without consulting counsel who still represented him.  The court cannot think of any reason why that confession would not be admissible in a second trial.  *See Christopher v. State*, 583 So.2d 642 (Fla. 1991) (holding that voluntary incriminating statements not made in response to an officer's questioning are freely admissible); *Bey v. Morton*, 124 F.3d 524 (3d

**State Court Decision**

The Rule 3.850 court held, quite bluntly, that "it would have been absurd to call Adam Blanton.  To call the victim of the defendant's other crime would have been a recipe for disaster.  And the defense attorney cannot call an alibi witness when his client has confessed to him that he did the crime." (*Id.* at 102).  The court further held that not calling Mr. Blanton was a strategic decision and that there was no prejudice (*id.*).

**Federal Review of State Court Decision**

This claim merits little discussion.  Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. *Chandler*, 218 F.3d at 1314 n. 14 (citing *Waters v. Thomas*, 46 F.3d at 1512, 1518-19).  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."  *Waters*, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).

The Rule 3.850 court's factual findings are accorded deference, and its decision was clearly supported by the record.  Mr. Siarkiewicz has not shown that no other lawyer would have made the same decision.  Moreover, Mr. Siarkiewicz has not presented this court with sufficient facts to show that Mr. Blanton was available for trial, and, more particularly, would have been willing to help out the person who had stolen his car.[10]  This court will not "'blindly accept speculative and inconcrete

---

Cir. 1997) (holding that death row inmate's voluntary confession to prison guard while appeal was pending was admissible at retrial after first conviction was reversed).  In other words, be careful what you ask for.

[10]In his testimony at the Rule 3.850 court, defense counsel strongly hinted that he believed that Adam Blanton was also involved in the burglary, but admitted he had nothing specific to back that up.

claims . . . .'" *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)). Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[11] Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980). There is nothing in the record to support Mr. Siarkiewicz' supposition that Mr. Blanton would have been of any help. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

      7.    <u>Cumulative effect of counsel's errors.</u>

      Mr. Siarkiewicz next contends that the cumulative effect of counsel's failures denied him his right to a fair trial. The Rule 3.850 court found that there were no errors, so there was no accumulation of errors such as to entitle Mr. Siarkiewicz to relief (ex. U, p. 102). This court agrees. *See United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.")

      8.    <u>Failure to impeach defendant's mother.</u>

      For his last ground for relief Mr. Siarkiewicz contends that his attorney was ineffective in not impeaching Margaret McCafferty, Mr. Siarkiewicz' mother. He argues that Ms. McCafferty testified at trial that she had thrown him out of her home on the day of the burglary, but she had earlier told the police that she had told him

---

[11]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

to leave on "Saturday."  (Doc. 1, p. 36).

In his motion for post-conviction relief Mr. Siarkiewicz asserted that his mother would have testified that he had been at her house for only a short while, and that they had agreed that he would leave that week (ex. L, p. 17).  At the Rule 3.850 hearing Mr. Siarkiewicz did not testify directly on the issue.  He presented his mother at the hearing, and she read portions of a police report to the effect that she told the police that Mr. Siarkiewicz had been at her home for only a few days and that he was going to leave Saturday (ex. U, p. 29).  However, he left "that night."  (*Id*. at 30).  "That night" was never identified specifically, but in context it appears she meant that Mr. Siarkiewicz moved out on Friday, September 22, 2000, which was the day of the burglary.  She testified that she was not sure what was said when, but she thought she told the prosecutor that she had told Mr. Siarkiewicz to move out on that Friday (*id*. at 33).

Defense counsel testified that Ms. McCafferty's testimony was consistent with what she had told him, but inconsistent with what she had told the officer (*id*. at 50).  He also testified that he "walked gingerly" at trial around the issue of when and why Mr. Siarkiewicz left her home, because he did not want the jury to hear "about drug use and stuff like that."  (*Id*. at 51).  On cross examination defense counsel agreed that inconsistent statements could be used for impeachment (*id*. at 85).

### State Court Decision

The Rule 3.850 court held that it was reasonable for counsel not to try to embarrass Mr. Siarkiewicz' mother.  To make her look bad in front of the jury "would have been bad," and furthermore there was no prejudice.

### Federal Review of State Court Decision

In essence the Rule 3.850 court found that counsel's decision not to cross examine Ms. McCafferty as Mr. Siarkiewicz wanted was a strategic decision, that the decision was sound, and that in either event there was no prejudice.  Based on this court's review of the record, these holdings are amply supported.  Indeed, contrary

to what Mr. Siarkiewicz asserts, it appears that there was no true inconsistency between what Ms. McCafferty told the police[12] and what she told the jury at trial.

At trial she testified as follows:

Q    Ma'am, on September 22nd of the year 2000, at about that time had your son for some time previously to that day before September 22nd been living with you?

A    Yes.  He stays with me when he's in town.

Q    And on September 22nd did you ask your son to move out?

A    I did.

Q    And did your son move out on September 22nd?

A    He did.

(Ex. B, p. 58).

Ms. McCafferty did not tell the jury that she told her son that his deadline for moving out was September 22, only that she told him, that day, that he had to move out.  This does not conflict with her report to the police that she told him to be gone by September 23, but that he left on September 22 instead.  If she had been cross examined on this supposed consistency, she could easily have been rehabilitated by the state on redirect.  And the jury would likely have reasonably concluded that on September 22 Ms. McCafferty told her son that he had to be gone by the 23rd, but that he left the 22nd instead, which is what actually happened.

And finally, what would have been the point of impeaching Ms. McCafferty? Nobody claims that Mr. Siarkiewicz moved out on September 23, the day after the burglary, and nobody disputes that he was told (or agreed) to move out.  The evidence was undisputed that he moved out on the day of the burglary, which was

_____

[12]Mr. Siarkiewicz has not pointed to a copy of the police report in the record, nor has the court found one.

the critical piece of circumstantial evidence about which Ms. McCafferty testified. Impeaching Ms. McCafferty would not have cast any doubt on her credibility on this point.  It would have been a pointless, and probably dangerous, exercise.  It most certainly would have made no difference in the outcome of the case.

The Rule 3.850 court's decision was clearly supported by the record, and Mr. Siarkiewicz has not shown that no other lawyer would have made the same decision. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the instant 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the convictions and sentences in *State of Florida v. Jason S. Siarkiewicz* in the Circuit Court of Leon County, Florida, case no. 00-03844, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 18th day of February, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not</u>**

**control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**